UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARY PARKS,                                        :

              Plaintiff,                        :        06 Civ. 1364 (DAB) (GWG)

    -v.-                                           :        **REPORT AND
                                                                        RECOMMENDATION**

ABC, INC., MCA/UNIVERSAL, INC., and                :
VERVE MUSIC GROUP,
                                                   :
             Defendants.
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Mary Parks brought this action pro se against defendants ABC Records, Inc.

(sued as "ABC, Inc.") ("ABC"), Universal Studios, Inc. (sued as "MCA/Universal, Inc.")

("Universal"), and UMG Recordings, Inc. (sued as "MCA/Universal, Inc. and Verve Music

Group") ("UMG").  While the plaintiff's papers are difficult to follow, it appears that she

purports to raise claims of copyright infringement, violations of the Lanham Act, and various

state-law claims, including conversion, fraud, and unjust enrichment.  Defendants ABC and

UMG now move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the

following reasons, the defendants' motion should be granted with Parks given leave to replead as

discussed below.

I.  BACKGROUND

    A.  Factual History

What has been docketed as Parks's complaint, filed Feb. 21, 2006 (Docket #2)

("Compl."), consists of several letters to the Court, to which have been annexed contracts,

correspondence, reproductions of album covers, and other documents.  The following is a

summary, in roughly chronological order, of what appear to be the facts of greatest significance to any potential legal claims.  All of these facts are accepted as true for purpose of the current motions.

      1.  <u>Albert Ayler Recording Sessions</u>

On December 23, 1966, Parks signed a lease to rent the Village Theater in New York City for a jazz concert on February 25, 1967.  <u>See</u> Compl. at 28-31.[1]  Albert Ayler, a jazz musician, performed at the theater along with his band; recordings from the concert were later released on an album entitled "The Village Concerts."  <u>See id.</u> at 34-35 (color photocopy of The Village Concerts album cover).

On July 20, 1967, Alan S. Bergman, an attorney at ABC Records, wrote to Ayler, enclosing "one fully executed copy of the recording agreement and Master Purchase Agreement both between you and ABC Records, Inc."  <u>Id.</u> at 22.  That contract appears to be a five-year deal, <u>see id.</u> at 24, ¶ (j), with an advance of $5,000 for the first two records.  <u>Id.</u> at 25.  The version of this contract annexed to the complaint has a last page that does not conform in paragraph numbering or page numbering to the first two pages.  <u>See</u> Compl. at 23-25.

Ayler and his band also recorded at Radio City Music Hall recording studios on August 26, 1969.  <u>See</u> Compl. at 120.  The author for every song in the session's track listing is Parks.  <u>Id.</u>  She also performed the vocals for four songs under the stage name "Mary Maria."  <u>Id.</u>  Six songs from this session were released on the album "Music is the Healing Force of the Universe."  <u>See id.</u> at 122-23 (color photocopy of the album cover).  Ayler died in November

---

[1]The citations to page numbers refer to the page numbers that the defendants added to the complaint and which appear in Exhibit A to the Affirmation of Andrew H. Bart, filed May 22, 2006 (Docket #14) ("Bart Aff.").

1970.  See Memorandum of Truth, filed June 5, 2006 (Docket #18) ("Pl. Opp."), at 2.[2]

### 2. Parks's Songwriting Royalties

On March 9, 1969, Ayler wrote to Broadcast Music, Inc. ("BMI")[3] to explain that the

songwriting credits for the songs "Heart Love," "Free at Last," "Everybody's Movin'," "New

Ghosts," and "New Generation" were misattributed and should be credited to Parks.  Compl. at

85.  Parks and Ayler apparently registered these same five songs, as well as "Message from

Albert," with BMI.  See id. at 39-49 (BMI Writers Clearance Forms, dated Feb. 18, 1970).  In

addition, Bob Theile, who headed Impulse Records, a label on which Ayler recorded, wrote to

Birthday Music, Inc., a music publisher, to indicate that Parks should have songwriting credits

for the songs, "Everybody's Movin'" and "Free at Last."  See Pl. Opp. at 35.

In 1970, Parks signed several "Standard Songwriters Contracts" which sold the songs

"Free at Last," "Everybody's Movin'," "New Generation," and "Message from Albert" to certain

music publishers.  See Compl. at 50-55 (contracts dated Feb. 20, 1970; Feb. 24, 1970; Mar. 6,

1970).  She also signed "Uniform Popular Songwriters Contracts," selling the songs "Heart

Love," "Free at Last," "Everybody's Movin'," "New Ghosts," and "New Generation" to the

music publishers.  See id. at 56-65 (contracts, one undated and the remainder dated Mar. 13,

1970).  In Paragraph 1, the "Uniform Popular" contracts specify that "[T]he writer hereby

sells . . . [an] original music composition . . . for the original term of the United States copyright

---

[2]The Court has added page numbers to this submission and its attachments.

[3]BMI is a performing rights society.  Such societies, including BMI, ASCAP, and
SESAC, are the assignees of their members' performance rights.  The society then pools the
rights and grants licenses for performances.  In turn, the society makes royalty payments to its
members.  See generally 2 Nimmer on Copyright § 8.19.

or for the period of twenty-eight years . . . whichever may be shorter . . . ." Id. at 56, 60, 64.

Paragraph 8, entitled "Terms of contract," specifies:

> All rights in and to the composition . . . shall revert to the Writer upon expiration of the original term of the United States copyright or at the end of twenty eight (28) years . . . .  The Publisher shall, at the expiration of said period, execute any . . . documents which may be necessary . . . to re-vest in the Writer any and all rights in and to the composition . . . provided, however, that if the Writer shall sell or assign to some person other than the Publisher, his rights in the United States renewal copyright in the composition, or any of his rights in the composition in the United States or elsewhere, for the period beyond said original term or twenty-eight years . . . then, unless there shall have been given to the Publisher at least six months' written notice of an intention to offer said rights for sale, the Publisher shall not be obligated to assign to the Writer said rights in countries other than the United States and Canada, and this contract, and the assignment under Paragraph 1 hereof, shall all continue in respect of such rights in countries other than the United States and Canada.

Id. at 58, 62.

On March 17, 1970, Parks wrote to George Port of ABC Records, apparently complaining that "Mr. Berger" (perhaps intending Alan S. Bergman) had promised her a recording contract and that she still had not received one.  See id. at 119.  She wrote, "I worked hard teaching Albert and teaching his musicians how to sing my songs and how to play my music and they have taken all of my compositions and now won't speak to me." Id.; see also Pl. Opp. at 2 ("They took my rock/pop compositions that I wrote when I was a teenager in school."[4]).  Port responded, see Compl. at 118 (letter of Apr. 9, 1970), and enclosed Uniform Popular Songwriters Contracts, selling the songs "A Man is Like a Tree," "Island Harvest," "Masonic Inborn," "Music is the Healing Force," "Oh Love of Life," "Drudgery," and "Toiling" from the authors (including Parks) to Pamco Music.  See id. at 94-105, 176-77 (contracts dated

---

[4]Here and elsewhere, the Court has used standard punctuation and capitalization in its quotation of Parks's submissions.

Apr. 9, 1970).  Parks also signed Uniform Popular Songwriters Contracts that sold the songs

"Again Comes the Rising of the Sun," "All Love," "Desert Blood," "Birth of Mirth," "Joining

Forces," "Poetic Soul," and "Water Music" to Pamco Music.  See id. at 164-75, 180-81

(contracts dated May 12, 1970).  Parks signed one final Uniform Popular Songwriters Contract,

selling the song "Untitled Duet" to Pamco Music.  Id. at 178-79 (contract dated Apr. 1, 1971).

In 1998, Parks filed supplementary registrations with the U.S. Copyright Office.  The

new registration forms attempted to modify the copyright ownership in the words and music for

the songs "Everybody's Movin'," "Free at Last," "Heart Love" from joint authorship with Ayler

and others to her sole authorship.  Id. at 74-79.  In addition, she filed to change the ownership in

"New Generation" from joint ownership to sole ownership by herself for the words and joint

ownership with Rose Marie McCoy for the music.  Id. at 80-81.

### 3.  Japanese Rights

On November 12, 1985, Parks signed an authorization permitting the Japanese Society of

Rights of Authors and Composers ("JASRAC") to license her material in Japan.  Id. at 182-83.

But according to an e-mail written by "Chieko," presumably a JASRAC employee, to "Bernard,"

"some of the works are published by other publishers and written by only Albert Ayler."  Id. at

89 (e-mail dated Jan. 2, 2002).  The actual songs are not listed, but Parks apparently was still

concerned about her songwriting royalties because the e-mail includes handwritten annotations

so suggesting.  See id. ("They are a team of pirates who pay only themselves and their people.").

### 4.  Copyright Renewals, Bachman, and Paragraph 8

On October 4, 1995, Parks filed Certificates of Registration with the U.S. Copyright

Office to renew copyrights in the songs "Everybody's Movin'," "Free at Last," "Heart Love,"

and "New Generation."  See id. at 66-73.  On January 31, 1998, Parks renewed copyrights in the

songs "A Man is Like a Tree," "Drudgery," "Island Harvest," "Music is the Healing Force,"

"Again Comes the Rising of the Sun," "All Love," "Birth of Mirth," "Desert Blood," and "Poetic

Soul."  See Compl. at 108-09, 112-17, 146-53, 156-57.  On March 16, 1998, Parks renewed

copyrights in the songs "Oh Love of Life," "Masonic Inborn," "Joining Forces," and "Water

Music."  Id. at 106-07, 110-11, 154-55, 162-63.  On April 29, 1998, Parks renewed the copyright

in the song "Toiling."  Id. at 158-59.  On January 10, 1999, Parks renewed the copyright in the

song "Untitled Duet."  Id. at 160-61.

   In the meantime, on November 15, 1996, Lewis M. Bachman of the Songwriters Guild of

America wrote letters to Birthday Music, Inc., the publisher to whom Parks had assigned the

rights to "Everybody's Movin'," "Free at Last," and "Heart Love," and a letter to Mention

Music, the holder of the rights to "New Generation."  Id. at 82-84.[5]  In these letters, Bachman

gave notice, pursuant to Paragraph 8 of the contract, that he "intend[s] to offer for sale or

assignment" the rights in these songs.  Id.  He signed the letters, "Lewis M. Bachman, Acting

pursuant to power of attorney from Mary Parks."  Id.  Copies of each of the four letters are now

annotated by hand, by Parks, with the statement, "This document was forged with intent to

commit fraud by Lewis M. Bachman and [Songwriters Guild of America]."  Id.

   Fifteen additional letters with identical text were sent by Bachman to Duchess Music,

giving notice under Paragraph 8 for the songs "A Man is Like a Tree," "Drudgery," "Island

Harvest," "Masonic Inborn," "Music is the Healing Force," "Oh Love of Life," "Again Comes

---

[5]The letter regarding "New Generation" is not reproduced in UMG's reproduction of the
complaint.  It appears as the 68th page of Parks's submission.

the Rising of the Sun," "All Love," "Birth of Mirth," "Desert Blood," "Joining Forces," "Poetic

Soul," "Toiling," "Untitled Duet," and "Water Music."  See Pl. Opp. at 11-16, 22-30.  These

letters are also hand-annotated with the assertion that they were forged by Bachman.

A few months later, Parks wrote to Bachman, still trying to clarify the songwriting credits

for her early songs.  See Compl. at 38 (letter dated Feb. 7, 1997).  She also enclosed $60 "for the

new contracts."  Id.  Finally, she wrote, "Thanks to you for your concern regarding the Paragraph

#8 contracts.  Please do not offer for sale or assign any of my work.  No contract, no deal."  Id.

On September 3, 1997, a New Jersey warrant was issued for Bachman's arrest on the

ground that Bachman "did commit false swearing . . . when he signed documents saying that he

was acting pursuant to power of attorney from complainant, Mary Parks."  Id. at 125.  No

information is provided on the outcome of the arrest warrant, but on August 23, 2002, Parks filed

a new complaint with the Weehawken, New Jersey Police Department, which reflects that Parks

stated that "a Mr. Lewis M. Bachman forged her signature on the terms of a contract Paragraph

#8."  Id. at 126.  The report continues:

> The victim claims Mr. Bachman made a letter up stating the victim gave
> permission for him to have power of Attorney to sell the rights to her
> compositions musical outside the United States. . . . Mary Parks stated in my
> presence that Mr. Bachman Attorney/Songwriters Guild of America forged with
> intent to defraud and committed fraud.

Id.

### 5. Sale of Songs by ABC to Duchess

Parks appears to have discovered that her songs were sold by ABC Records to Duchess

Music.  She wrote to High Fashion Music in the Netherlands and it replied with a letter dated

April 17, 2003.  See id. at 132.  The relevant portion reads:

> We are astonished.  We do not claim any titles on behalf of any company you
> mentioned in your fax.  However, I have investigated and your title
> 'Drudgery' . . . is registered by MCA Holland, on behalf of Duchess.  It's likely
> they claim more titles you own.  You will never receive any mechanical
> royalties . . . if you do not appoint a sub-publisher in Europe.  I have to inform
> you about that, out of courtesy.  May I advise you to appoint a representative in
> Europe. . . . Now, all [revenue] goes to MCA/Universal and when they withdraw
> their claim, the monies are returned to the record company and you'll end up with
> nothing.

Id.

Apparently, Parks then hired a lawyer, Gregory D. Harmon, to attempt to determine how

her work was assigned to Duchess.  Harmon wrote to Bachman, including the request: "I would

appreciate it if you would forward to my office the power of attorney it is alleged that my client

signed that enabled you to assign her works."  Id. at 128 (letter dated Aug. 7, 2003).  Harmon

wrote again to Bachman, apparently enclosing a letter written by Bachman on September 3, 1997

(the same date as the New Jersey arrest warrant) which allegedly assigned some of Parks's rights

to Duchess Music.  Id. at 129 (letter dated Sept. 30, 2003).  Again, Harmon asked for a copy of

the power of attorney "as well as your explanation for sending this letter."  Id.  Bachman and

Harmon spoke on October 20, 2003 and Harmon wrote him again, asking that Bachman "plac[e]

in writing exactly why [he] wrote the letter to Duchess Music on September 3, 1997."  Id. at 130

(letter of Nov. 10, 2003).

### 6. Letters to the Defendants (2003-2005)

In November 2003, Harmon wrote a letter to a "Ms. Castle" of defendant UMG stating

that he wanted "to ascertain how you obtained 100% mechanical share" for various songs

inasmuch as "[i]t was my client's understanding that said copyrights reverted to her in 1998."

Id. at 131 (letter of Nov. 10, 2003).[6]  Parks herself seems to have written to defendant ABC later that month, claiming that ABC stole the rights to her music.  See Pl. Opp. at 17.  ABC replied on March 10, 2004,[7] stating that it has no record of entering into any contract with Parks.  See id. Furthermore, ABC suggested that Parks direct her enquiries to MCA, since it is now the owner of ABC's former record label.  Id.

On December 17, 2004, Parks wrote to Ron Goldstein, the president of Verve Music Group, the jazz recording subsidiary of defendant UMG.  See Compl. at 140.  She asked Goldstein to provide "the authorization and power of attorney that was utilized" in Verve's alleged purchase of Parks's songs.  Id.  She asked that Goldstein tell her who sold the songs to Verve.  Id.  Parks adds: "You have distributed my properties internationally in total disregard of my legitimate ownership of these works."  Id.

In 2005, Parks wrote to the presidents of the defendants ABC, Inc., MCA, Inc., and Verve Music Group.  See id. at 134-36 (letter of Feb. 5, 2005).  In this letter, she asserts that they have committed "an international federal crime of fraud [and] infringement of my copyrights in your illegal seizure, sale, and purchase of my properties; illegal licensing, packaging, and distribution of my properties internationally, without an agreement or a contract signed by me." Id. at 134.  She asked for a return of her "masters," the return of which she asserts was promised at the expiration of her contracts on January 1, 1999, after the 28-year period.  Id. at 135.

---

[6]The referenced songs are "Music is the Healing Force," "Drudgery," "Island Harvest," "A Man is Like a Tree," "Oh Love of Life," "Masonic Inborn," "Water Music," "Untitled Duet," "Toiling," "Poetic Soul," "Desert Blood," "Birth of Mirth," "All Love," and "Again Comes the Rising of the Sun."  Compl. at 131.

[7]While ABC's letter is dated March 10, "2003," it refers to Parks's letter of November 30, 2003, and Parks says she received it in March 2004.  See Pl. Opp. at 5.

Finally, she requested: "I want my share of the fortune that you and yours stole from me."  Id. at 136.

Parks wrote again to ABC.  See id. at 137-39 (letter of Apr. 9, 2005).  Here, she asserted that she "loan[ed]" her songs to Ayler "on a promise from ABC's president" that if they released an album with her songs, "they would sign a separate contract with" Parks.  Id. at 137.  ABC sold her works overseas, she stated, mis-crediting Ayler as the sole author, and making "billions" in profit.  Id.  ABC "illegally sold" her work to MCA, Parks alleged, "without an agreement or a contract signed by [her]," id., and MCA "illegally sold" her work to Verve.  Id. at 138.

Parks next stated that she has been paid approximately $2,500 to date – apparently in royalties for her music.  Id.  She alleged that ABC has committed the crimes of "conspiracy, international fraud, illegal licensing, illegal distribution, soliciting, [and] confiscation, . . . all without a contact signed by me."  Id.  She asked ABC for her "share of yesteryear and today's profit," id., which she asserts is at least $50 million, including interest.  Id. at 139.

### B.  Parks's Letters to the Court

To commence this lawsuit, Parks submitted two letters to the Court, dated July 25 and 26, 2005, along with attachments.  See id. at 5-10.  The letters were docketed on February 21, 2006 as part of Parks's complaint in this action.  See id. (Docket #2).  In these letters, Parks alleges that the defendants engaged in "international copyright infringement [and] international copyright fraud."  Id. at 9.  She states that her "name was deleted as the author/composer" of 23 songs, id. at 5, and that the defendants released albums with her compositions without having signed a contract with her.  Id. at 6.  She requests that the Court order the defendants to either produce a copy of a contract permitting them to sell her works, or if they are unable to do so,

then to order the defendants to release her master recordings and copyrights and to turn over to Parks the "fortune they took (stole) from" her.  Id. at 7-8.

In a later submission, Parks states that she is "upgrading my charges to include conspiracy, identity fraud, . . . illegal international licensing, packaging, distribution, soliciting, and the confiscation and theft of all of the proceeds from my properties except, literally, pennies."  See id. at 13 (letter dated Nov. 21, 2005).  She also alleges that the defendants have engaged in "an international crime of copyright fraud."  Id. at 16.  She requests damages awarded to her in the amount of her "share of the billions of dollars they robbed me for."  Id. at 18.

C.  Procedural History

ABC filed its motion to dismiss on May 9, 2006.  See Notice of Motion (Docket #8); Memorandum of Law in Support of Motion to Dismiss by ABC Records, Inc. (Docket #9) ("ABC Mem.").  UMG filed its motion to dismiss on May 22, 2006.  See Notice of Motion to Dismiss the Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (Docket #12); Memorandum of Law in Support of Defendant UMG Recordings, Inc.'s Motion to Dismiss (Docket #13) ("UMG Mem."); Bart Aff.  Parks submitted a response ("Pl. Opp.") on June 5, 2006, opposing the motion (Docket #18).  ABC and UMG filed reply briefs.  See Reply Memorandum of Law in Support of Motion to Dismiss by ABC Records, Inc., filed June 8, 2006 (Docket #15) ("ABC Reply"); Reply Memorandum of Law in Further Support of Defendant UMG Recordings, Inc.'s Motion to Dismiss, filed June 14, 2006 (Docket #17).  Parks submitted another memorandum, see Plaintiff's Sur-reply, dated June 21, 2006 ("Parks Sur-reply"), which UMG, by letter of June 27, 2006, urges the Court to reject as an improperly submitted sur-reply.  In October 2006, Parks

wrote to the Court attaching a letter dated September 25, 2006 to former Chief Judge Mukasey along with a number of other attachments. See Letter to the Honorable Deborah A. Batts, from Mary Parks, filed Feb. 5, 2007 (Docket #21).

## II.  LAW GOVERNING MOTIONS TO DISMISS

In resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). A complaint need only include a short and plain statement of the claim, see Fed. R. Civ. P. 8(a)(2), and "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Nonetheless, its allegations must be "sufficient to establish liability." Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 344 (2d Cir. 2006). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In making this determination, complaints drafted by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and they should be interpreted "to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

For purposes of deciding a motion to dismiss, a court may consider not only the facts and allegations that are contained in the complaint, but also those contained "in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."

Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  In addition, a court may consider a document that is "integral to the complaint" where the complaint relies "heavily upon its terms and effect" even the document is not incorporated by reference.  Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

III.  DISCUSSION

ABC argues that all of Parks's claims are barred by statutes of limitations, see ABC Mem. at 5-9, or alternatively, by laches.  Id. at 9-10.  UMG also argues that all of Parks's claims are barred by statutes of limitations, see UMG Mem. at 4-11; that once the federal claims are dismissed as time-barred, the state-law claims must be dismissed for lack of subject matter jurisdiction, see id. at 14-15; and that the state-law claims are preempted by the federal Copyright Act because they are equivalent to the rights granted by the Act.  Id. at 16-17.

A.  Copyright Claims

For reasons explained further below, we begin by considering the extent to which Parks's complaint is based on her claim to ownership of any of the compositions at issue.

1.  Ownership Claims

Pursuant to 17 U.S.C. § 507(b), "[n]o civil action shall be maintained under the provisions of this title [relating to copyright] unless it is commenced within three years after the claim accrued."  A recent case has summarized the law regarding the copyright statute of limitations as it pertains to ownership of a copyright:

> Under settled Second Circuit precedent, plaintiffs are "time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration."  Merchant v. Levy, 92 F.3d 51, 56 (2d Cir. 1996).  The three-year statute of limitations also

13

applies to plaintiffs "seeking a declaration of sole ownership."  Barksdale v. Robinson, 211 F.R.D. 240, 244 (S.D.N.Y. 2002); see Newsome v. Brown, 2005 WL 627639 at *5-6 (S.D.N.Y. March 16, 2005) (dismissing copyright infringement claims where "essence of the claim . . . is that [plaintiff] is claiming sole ownership"); Minder Music Ltd. v. Mellow Smoke Music Co., 1999 WL 820575, at *1-2 (S.D.N.Y. Oct. 14, 1999) (applying three-year statute of limitations to copyright infringement claim where "[p]laintiff contends that defendants' chain of title is invalid and that plaintiff is the sole owner of the Copyrights").

Copyright ownership claims accrue "when a plaintiff knows or has reason to know of the injury upon which the claim is premised."  Merchant, 92 F.3d at 56; see Barksdale, 211 F.R.D. at 244.  Thus, this Court has ruled that "[a]n express assertion of sole authorship or ownership will start the copyright statute of limitations running."  Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997).

Big East Entm't, Inc. v. Zomba Enters., Inc., 453 F. Supp. 2d 788, 794 (S.D.N.Y. 2006); accord Kwan v. Schlein, 441 F. Supp. 2d 491, 499 (S.D.N.Y. 2006) ("[T]he Second Circuit has held that co-authorship claims accrue once and for all when the plaintiff knows or should have known that an alleged co-author has been injured by his co-author's claim of exclusive copyright in the subject work.").

At some points, Parks's submissions seem to allege disputes over ownership of certain songs.  See Compl. at 5 ("My name was deleted as the author / composer of my award winning properties"); id. at 6 ("I have news that Verve Music Group is the new owner of my masters and my copyrights that I own."); id. at 9 ("They deleted my name as the author / composer of my compositions and sold my copyrights under the name of their recording artist.").  These disputes are alluded to in some of the correspondence she has attached to her complaint, see Compl. at 38, 85, 131; Pl. Opp. at 35, as well as in her efforts to amend her copyright registrations to reflect that ownership should be vested solely in herself rather than as a co-author.  Compl. at 74-81.  However, none of these instances are within the three-year limitations period prior to the filing

14

of this suit in 2006.  Thus, any complaints regarding her ownership are time-barred.  See, e.g.,

Netzer, 963 F. Supp. at 1315 ("[a]n express assertion of sole authorship or ownership will start

the copyright statute of limitations running").  Nor has Parks alleged any facts that would result

in equitable tolling.  See, e.g., Barksdale, 211 F.R.D. at 245; Carell v. Shubert Org., Inc., 104 F.

Supp. 2d 236, 250 (S.D.N.Y. 2000).  Accordingly, any ownership claims must be dismissed as

against both UMG and ABC.

### 2. Copyright Infringement Claims

Consistent with the case law discussed above, it has been held that where the "gravamen"

of a complaint is a dispute over ownership, the entire complaint must be dismissed as time-

barred, including any infringement claims.  See, e.g., Barksdale, 211 F.R.D. at 246 (where

ownership claim is time-barred, infringement claim is barred "[w]hen the gravamen of a

plaintiff's copyright claims is ownership, and not infringement"); accord Big East Entm't, Inc.,

453 F. Supp. 2d at 796 (where plaintiff "based its infringement claim entirely upon its alleged

ownership of" the underlying works, the infringement claim must be dismissed where the

ownership claim is time-barred); Newsome, 2005 WL 627639, at *6-7 (dismissing infringement

claim where "the essence of the claim is . . . an attack on the ownership or co-ownership rights"),

aff'd, 2006 WL 3623498 (2d Cir. Dec. 12, 2006); Minder Music, 1999 WL 820575, at *2

(infringement claim barred "when copyright ownership rights are the true matter at issue" and an

ownership claim is time-barred).

At the same time, there is case law holding that although a time-barred ownership claim

prevents a plaintiff from seeking any remedies that would flow from a declaration of ownership,

the statute of limitations does not affect a copyright holder's other substantive rights, including

15

the right to sue for infringement.  Carell, 104 F. Supp. 2d at 251-52.  Thus, in allowing an

infringement suit to proceed, Carell characterized the plaintiff's infringement claim as "her

principal cause of action" and "separate and distinct from [the plaintiff's] ownership claim."  Id.

at 254; accord Kwan, 441 F. Supp. 2d at 499 (stating that an infringement claim could exist

coincident to a time-barred co-ownership claim); Armstrong v. Virgin Records, Ltd., 91 F. Supp.

2d 628, 641 n.5 (S.D.N.Y. 2000) (indicating that a time-barred co-ownership claim would not

prevent an infringement claim); see also Sharp v. Patterson, 2004 WL 2480426, at *12 (S.D.N.Y.

Nov. 3, 2004) (permitting, without analysis, an infringement suit where a co-ownership claim

would be time-barred); Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 463-64 (S.D.N.Y.) (same),

aff'd, 230 F.3d 518 (2d Cir. 2000).  Here, if Parks has made any infringement claims distinct

from her claims regarding ownership, they would be permissible.  See, e.g., Roberts v. Keith,

2006 WL 547252, at *4 (S.D.N.Y. Mar. 7, 2006) ("any claims arising out of infringements

within the three-year period preceding the filing of suit are actionable ").

Defendants argue that Parks's complaint is principally about ownership.  See UMG

Mem. at 5-6; ABC Mem. at 6 n.4.  And it is certainly the case that much of Parks's submissions

could be construed as dwelling on the question of ownership. But the relative number of pages in

Parks's complaint that relate to disputes about ownership as opposed to infringement cannot be

dispositive of this question.  What is important, especially in light of Parks's pro se status, is that

portions of Parks's submissions seem to reflect that she does not believe that ownership of

certain songs, or at least original authorship or co-authorship, is in dispute.  Thus, her

submissions include songwriters contracts for 23 different songs referring to Parks as either the

author or co-author of each.  See Compl. at 50-65, 94-105, 164-81.  Ownership of the copyrights

16

in the 20 songs assigned by the form "Uniform Popular Songwriters Contract" appear to revest in the original authors – identified as Parks and her co-authors – after 28 years.  See id. at 56-65, 94-105, 164-81.  Indeed, Parks asserts that she exercised the renewal rights herself for the copyright in each song in 1998 and 1999.  See id. at 106-17, 146-63.

For these reasons, Parks's submissions might be construed as putting forth two distinct claims, neither of which is dependent on the other: (1) a claim that she is entitled to authorship or sole authorship for certain songs and (2) a claim that – with respect to which those songs for which her ownership are not in dispute – the defendants have infringed on her undisputed copyright through their exploitation of these songs without permission to do so.  Thus, if Parks were truly making a claim of this kind, there is no reason why it could not proceed with respect to any infringement that allegedly occurred beginning on or after July 21, 2003 – the date three years before the filing of this lawsuit.

The problem with Parks's submissions is that it is impossible to tell which specific songs she contends have been the subject of infringement since July 21, 2003, by which defendants, and in what manner.  A properly pleaded claim of copyright infringement must allege:

> (i) which specific original work is the subject of the claim, (ii) that plaintiff owns the copyright in the work, (iii) that the copyright has been registered in accordance with the statute, and (iv) by what acts during what time the defendant infringed the copyright.

Sun Micro Med. Tech. Corp. v. Passport Health Commc'ns, Inc., 2006 WL 3500702, at *12 (S.D.N.Y. Dec. 4, 2006) (quoting cases); accord Carell, 104 F. Supp. 2d at 250.  Parks's attachment of copies of certain copyright registrations may be sufficient to constitute an allegation that she registered the copyrights of those songs in accordance with the statutory requirements.  But Parks's submissions are simply too difficult to follow to be certain whether

17

she is asserting that all of these songs have been infringed upon since July 21, 2003; some of them; or none of them. Accordingly, Parks should be granted leave to file an amended complaint that properly pleads an infringement claim – assuming she truly intends to make such a claim. See, e.g., Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (it is "usual practice" to allow leave to replead upon granting of a motion to dismiss), cert. denied, 503 U.S. 960 (1992); Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) (same). As reflected in the case law cited, any such amended complaint must list each song with respect to which there is no ownership dispute; which defendants are infringing on the copyrights to these songs; in what manner they are doing so; and whether any infringement occurred after July 21, 2003. She must also allege with respect to any such song that the copyright was duly registered in her name.

If plaintiff files such an amended complaint, defendants will be free to make a renewed motion to dismiss based on statute of limitation grounds if they can show that Parks's ownership is in fact in dispute and the dispute arose prior to July 21, 2003.

B. Lanham Act Claims

Although Parks does not frame her complaint in such terms, both ABC and UMG suggest that some of her claims might be construed as arising under the Lanham Act. See ABC Mem. at 6-7; UMG Mem. at 7-9. At various points in her complaint, Parks appears to complain about not being properly credited as the author of songs that Ayler recorded. See Compl. at 5; see also id. at 74-81 (supplementary Copyright registrations changing authorship); id. at 85 (letter from Ayler to BMI regarding songwriting credits). The Lanham Act provides in pertinent part:

> Any person who, on or in connection with any goods or services, . . . uses in
> commerce any word, term, name, symbol, or device, or any combination thereof,

18

> or any false designation of origin, false or misleading description of fact, or false
> or misleading representation of fact, which— is likely to cause confusion, or to
> cause mistake, or to deceive as to the affiliation, connection, or association of
> such person with another person, or as to the origin, sponsorship, or approval of
> his or her goods, services, or commercial activities by another person . . . shall be
> liable in a civil action by any person who believes that he or she is or is likely to
> be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Parks's papers might be construed as alleging "reverse passing off"

– that is, a claim "in which A promotes B's products under A's name." Margo v. Weiss, 1998

WL 2558, at *9 (S.D.N.Y. Jan. 5, 1998), aff'd, 213 F.3d 55 (2d Cir. 2000).

Parks's complaint, however, reflects that her disputes over proper songwriting credits

arose long before July 21, 2000.  "[A] presumption of laches applies in a trademark action if the

plaintiff fails to bring suit within the six-year statute of limitations applicable to state-law fraud.

Once this presumption attaches, the plaintiff must show why the laches defense ought not to be

applied in the case." Id. at *10 (laches bar monetary damages where plaintiffs, alleging that they

were the real songwriters, had not been credited or paid for more than 30 years) (quoting

Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191-92 (2d Cir. 1996)) (internal citations and

punctuation omitted).

The complaint suffers from another potential defect with respect to any Lanham Act

claim. "Courts in the Second Circuit and this district repeatedly have barred Lanham Act claims

where the plaintiff's allegations merely restate his copyright claims and fail to show the

'requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly

false copyright.'" Barksdale, 211 F.R.D. at 246 (quoting Weber v. Geffen Records, Inc., 63 F.

Supp. 2d 458, 464 (S.D.N.Y. 1999)); accord Integrative Nutrition, Inc. v. Acad. of Healing

Nutrition, 2007 WL 294089, at *4 (S.D.N.Y. Jan. 30, 2007) (dismissing Lanham Act claim as

"equivalent to a claim for copyright infringement," where defendants allegedly plagiarized plaintiff's website, appropriating the material as their own).  In order to maintain a Lanham Act claim in addition to a copyright claim, "'an aggrieved author must show more than a violation of the author's protected right to credit and profit from a creation' . . . [and] must make a greater showing that the designation of origin was false, was harmful, and stemmed from 'some affirmative act whereby [the defendant] affirmatively represented itself as the owner.'"  Carell, 104 F. Supp. 2d at 262 (quoting Weber, 63 F. Supp. 2d at 463).

As it now stands, plaintiff's complaint cannot be construed as making any allegations distinct from any potential copyright claim.  Moreover, it appears that any potential Lanham Act claim would be barred by laches.  Finally, the complaint suffers more generally from the lack of specificity with respect to what particular products are at issue, what defendants are responsible for them, and when any such reverse passing off took place.

Nonetheless, consistent with the treatment of the infringement claims, Parks's complaint should be dismissed with permission granted to replead the Lanham Act claim if she is able to overcome these hurdles.  The Court notes that, in addition, any such amended claim would have to allege which songs are at issue; which defendants engaged in the practice of reverse passing off and in what manner; that the designation by defendants would have been likely to cause consumer confusion; and that Parks was harmed by the defendants' false designation of origin.  Defendants will of course be free to assert any applicable defenses.

C. State Law Claims

In light of the disposition of the complaint, it is not necessary to reach defendants' arguments regarding the merits of the state-law claims inasmuch as any such claims should be

dismissed along with the federal claims for want of jurisdiction.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  In the event Parks files an amended complaint and chooses to add any state-law claims, defendants will be free to make an appropriate motion with respect to such claims.

Conclusion

For the foregoing reasons, the defendants' motion to dismiss should be granted with leave given to Parks to replead her claims within 30 days of the entry of an order granting the motion to dismiss.  If no amended pleading is filed within that time period, the Clerk should be directed to enter judgment dismissing the complaint.  See Elfenbein v. Gulf & W. Indus., Inc., 590 F.2d 445, 450 (2d Cir. 1978).

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (e).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Deborah A. Batts and to the undersigned at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Batts.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: February 16, 2007
  New York, New York


                  _____

                  GABRIEL W. GORENSTEIN
                  United States Magistrate Judge


Copies sent to:

Mary Parks
P.O. Box 1399
New York, NY 10027

Indira Suh Satyendra
ABC, Inc.
77 West 66th Street
New York, NY 10023

Andrew H. Bart
Carletta F. Higginson
Jenner & Block, LLP
919 Third Avenue, 37th floor
New York, NY 10022

Hon. Deborah A. Batts
United States District Judge

Dated: February 16, 2007
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Mary Parks
P.O. Box 1399
New York, NY 10027

Indira Suh Satyendra
ABC, Inc.
77 West 66th Street
New York, NY 10023

Andrew H. Bart
Carletta F. Higginson
Jenner & Block, LLP
919 Third Avenue, 37th floor
New York, NY 10022

Hon. Deborah A. Batts
United States District Judge

22